**MARRS et al. v. CITY OF OXFORD et al.**

**RAMSEY et al. v. SAME.**

Circuit Court of Appeals, Eighth Circuit.
March 25, 1929.

Rehearing Denied June 10, 1929.

Nos. 8268, 8271.

136

H. W. Hart, of Wichita, Kan. (Glenn Porter and Enos E. Hook, both of Wichita, Kan., on the brief); for appellants Marrs and others.

K. M. Geddes, of El Dorado, Kan. (John J. Jones, of Chanute, Kan., and B. R. Leydig, of El Dorado, Kan., on the brief), for appellants Ramsey and others.

James A. Veasey, of Tulsa, Okl., and Austin M. Cowan and Chester I. Long, both of Wichita, Kan. (W. A. Ayres, C. A. McCorkle and J. D. Fair, all of Wichita, Kan., on the brief), for appellees.

Before LEWIS and KENYON, Circuit Judges, and WOODROUGH, District Judge.

LEWIS, Circuit Judge (after stating the facts as above). ■ The police power is an attribute of sovereignty to be exercised for the public welfare, and it has been authoritatively said: "The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community." Crowley v. Christensen, 137 U. S. 86, 89, 11 S. Ct. 13, 15 (34 L. Ed. 620); California Reduction Co. v. Sanitary Works, 199 U. S. 306, 324, 26 S. Ct. 100, 50 L. Ed. 204. Also, "that all contract and property rights are held subject to" a fair exercise of the police power. "* * * And it is well settled that the enforcement of uncompensated obedience to a legitimate regulation established under the

police power is not a taking of property without compensation, or without due process of law, in the sense of the Fourteenth Amendment. * * * The contention that the statute in question denies to plaintiff in error the equal protection of the laws is not seriously pressed, and is quite unsubstantial." Chicago, & A. R. R. Co. v. Tranbarger, 238 U. S. 67, 77, 78, 35 S. Ct. 678, 682 (59 L. Ed. 1204). Necessarily these regulations will encroach, when the power is exercised, on private rights; but that does not render them void. The power has its limitations and when submitted for judicial review it must appear that its exercise appropriately affords protection to the public against threatened evils. Arbitrary and unreasonable regulations, clearly ineffective in accomplishment of the claimed public interest, will be stayed; but the presumption is in favor of a law or ordinance passed in the exercise of the power, until the contrary is shown. In Dobbins v. Los Angeles, 195 U. S. 223, 235, 25 S. Ct. 18, 20 (49 L. Ed. 169), the court said:

"The observations of Mr. Chief Justice Waite in that connection [Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77] had reference to the facts of the particular case and were certainly not intended to declare the right of either the legislature or a city council to arbitrarily deprive the citizen of rights protected by the Constitution under the guise of exercising the police powers reserved to the States. It may be admitted that every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and that it is not the province of courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community. But notwithstanding this general rule of the law, it is now thoroughly well settled by decisions of this court that municipal by-laws and ordinances, and even legislative enactments undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether under the guise of enforcing police regulations there has been an unwarranted and arbitrary interference with the constitutional rights to carry on a lawful business, to make contracts, or to use and enjoy property."

And it was there further said, quoting from Holden v. Hardy, 169 U. S. 366, 398, 18 S. Ct. 383, 390 (42 L. Ed. 780):

"The question in each case is whether the legislature has adopted the statute in exercise of a reasonable discretion, or whether its action be a mere excuse for an unjust discrimination or the oppression, or spoliation of a particular class."

In Winkler v. Anderson, 104 Kan. 1, 177 P. 521, 3 A. L. R. 268, the Supreme Court of Kansas had for consideration the validity of a State statute which made it unlawful to drill or operate oil or gas wells within one hundred feet of the right of way of any steam or electric line of railway. Winkler had an oil and gas lease on a strip of ground within one hundred feet of the right of way of a steam railway and he filed his bill for the purpose of enjoining enforcement of the penal provisions of the statute. His lease was valueless if the statute was valid. He claimed that the statute deprived him of property without compensation, without due process; that it denied him equal protection of the laws and that it abridged his privileges and immunities contrary to the provisions of the Constitution of Kansas and the Constitution of the United States. The Court said:

"The police power extends, not only to the protection of the public safety, health, and morals, but to the promotion of the common convenience, prosperity, and welfare. State v. Wilson, 101 Kan. 789, 794, 168 P. 679, L. R. A. 1918B, 374. While oil and gas wells are not nuisances per se, and the business of drilling and operating them is ordinarily legitimate and harmless, it is conceivable that they may become detrimental in a high degree. The greed for mineral in a rich field becomes insatiate. Steam and electric railway rights of way may be exploited, and unless the works, structures, establishments, activities, and products of mining operations be kept at a safe distance from railway tracks, life and property might be endangered, commerce impeded, and the general welfare seriously affected. If the legislature acted from some such considerations as these, it possessed power to fix a limit within which drilling and operating should not intrude, and the court is unable to say that a free space of one hundred feet is unreasonable."

Notwithstanding the allegations of the bill, it seems undeniable to us that when work of the kind under consideration is carried on in residential or business sections of a town or city without some limit to the number of wells in a given area, they will necessarily become nuisances of a most aggravated sort to its inhabitants and its business interests. There will be annoyance from unsightly

structures, disquieting noises of machinery, the immediate and constant presence of numbers of workmen and, the persistent thought of impending danger from explosion and conflagration because of the highly inflammable nature of the product. Such a situation calls for some governmental restriction and control. The greater the number of wells in a city block the greater will be the annoyance and hazards to the public. Indeed, it would be hard to say that an ordinance prohibiting the drilling and operation of any well within the business or residential districts of a city would be an unreasonable and invalid exercise of the police power. We do not doubt the validity of the ordinance here challenged. Its requirements and regulations are in protection of the public welfare, effective if enforced to accomplish that purpose; and the passage and adoption of it cannot in our judgment be justly said to be an arbitrary and unreasonable exercise of the city's power. This is enough to dispose of the appeal.

But looking to the substance of things, as equity does, what are the rights of plaintiffs that will be encroached upon or denied to them by the enforcement of this ordinance? It is not the mere right to drill a well on one or two lots at great cost and stop with that, or to take the proportionate part of the oil and gas in the pool that might be said to lie under or be fairly attributed to those lots. The obvious purpose was to reach the pool as quickly as possible and take all of the oil and gas obtainable before others could get it, thus seriously encroaching upon and probably destroying the same rights of adjoining lot owners. If one or more lot owners have given a lease for which no permit is obtainable their lessee may join a lessee who has a permit in the same block on terms that are fair to both lessor and lessee. If a lot owner has not given a lease he is protected by the asking in a fair proportion of the mineral produced by a permittee. The regulations make every effort to protect, rather than to destroy rights. They extend equal opportunity to all who have an interest and eliminate the race between those having equal rights in a common source of wealth, so that some may not take all and leave others with nothing. Under the law in Kansas there is no property in oil and gas, because of their migratory nature, until they have been captured, though each surface owner may take without limit, unless lawfully restrained. Phillips v. Springfield Crude Oil Co., 76 Kan. 783, 92 P. 1119; National Supply Co. v. McLeod, 116 Kan. 477, 227 P. 350. This is the rule also in Pennsylvania and Indiana. The nature of this right was fully discussed and defined in Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729. The court in that case, after accepting the general practice as a settled principle, that every owner of the surface within a gas or oil field might prosecute his efforts and reduce to his possession if possible all of the deposits without violating the rights of other surface owners, in the absence of regulations to the contrary, said:

"But there is a co-equal right in them all to take from a common source of supply, the two substances which in the nature of things are united, though separate. It follows from the essence of their right and from the situation of the things, as to which it can be exerted, that the use by one of his power to seek to convert a part of the common fund to actual possession may result in an undue proportion being attributed to one of the possessors of the right, to the detriment of the others, or by waste by one or more, to the annihilation of the rights of the remainder. Hence it is that the legislative power, from the peculiar nature of the right and the objects upon which it is to be exerted, can be manifested for the purpose of protecting all the collective owners, by securing a just distribution, to arise from the enjoyment by them, of their privilege to reduce to possession, and to reach the like end by preventing waste."

If this right in each and all of the surface owners can be thus restrained and its exercise regulated by a law of the state enacted for the purpose, how can it be held that a valid police regulation, which incidentally and in caution embodies the same restraint and regulation, can be made the basis of a claim that plaintiffs have a right to take all of it, and any restraint of that right violates constitutional guaranties? The basis of a statute, suggested in the Indiana case, is the governmental power to equally protect each surface owner in his right to a common fund. Complaint is made that the city was not vested with that power. Let it be conceded; still it does not follow that a court of equity will lend its aid to one in his effort to take all of a fund in which there is a community interest. The bill seems to us to be wholly without merit and the judgments of dismissal are

Affirmed.