

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 17, 1951

Hon. Joseph C. Ternus     Opinion No. V-1323.
County Attorney
San Patricio County     Re: Applicability of city
Sinton, Texas              ordinance regulating
                           mineral development
                           to county owned land
                           within city limits
                           leased or to be leased
                           for mineral develop-
Dear Sir:                     ment.

        Your letter requesting the opinion of the
Attorney General advises that the City of Sinton has
in force an ordinance regulating oil and gas develop-
ment within the city limits. The ordinance regulates
in detail all phases of the drilling and operating
of oil and gas wells within the corporate limits. It
divides the city into "drilling blocks" and allows
only one well to be drilled on each such block. A
permit must be obtained from the city before a well is
drilled. If more than one oil or gas sand is encoun-
tered, one well may be drilled into each sand. No ap-
plicant will be granted a drilling permit unless he
holds oil and gas leases or drilling contracts from
the owners of fifty-one per cent of the mineral lease-
hold estate in the drilling block. All owners of min-
eral estates in the block are to receive their propor-
tionate share of the proceeds from the well.

        San Patricio County owns land within the
city limits, including that on which the courthouse is
located. You are concerned as to the effect of the
city ordinance on the mineral development of this land.

        Your specific questions are as follows:

        "(A) Prior to the enactment of the
ordinance the county leased a small tract
of land situated within the city limits
and followed the procedure set forth in
your opinion V-582, and the well was
drilled prior to the ordinance. After en-
actment of the ordinance a different sand

has been found and the question now arises whether the city ordinance would prevent the lessee of the county from drilling into this new sand and paying to the county its full one-eighth, or must the county share with the other owners of the drilling block on which the land is situated in production of this new sand.  The position of the county is that this particular lease and the subsequent new sand is not bound by the city ordinance, which was enacted subsequent to the making of the lease.

"(B)  Concerning the block of land upon which the Courthouse is situated there has been no lease; is the county bound by the city ordinance or may it lease the Courthouse square following the procedures set out in your opinion V-582."

Cities may validly enact such ordinances under their police power if the ordinance expresses a substantial and definite purpose to serve the public and the means prescribed bear a reasonable relationship to the accomplishment of that purpose. Marrs v. City of Oxford, 32 F.2d 134, 67 A.L.R. 1336 (C.C.A. 8th, 1929, cert. den. 280 U.S. 573);  Tysco Oil Co. v. Railroad Commission, 12 F. Supp. 195 (S.D. Tex. 1935); Tysco Oil Co. v. Railroad Commission, 12 F. Supp. 202 (S.D.Tex. 1935); Klepak v. Humble Oil & Refining Co., 177 S.W.2d 215 (Tex.Civ.App. 1944, error ref. w.o.m.).  The ordinance of the City of Sinton meets these requirements.  Under its police power the city may not only regulate mineral development within its limits, as here, but completely prohibit mineral development within the city limits if necessary to protect and serve the public.  Marblehead Land Co. v. Los Angeles, 47 F.2d 528 (C.C.A. 9th 1931, cert. den. 284 U.S. 634).  For a complete discussion of the validity of city ordinances regulating or prohibiting mineral development within city limits, see Annotation, 168 A.L.R. 1188.

In Attorney General's Opinion V-582 (1948) it was held that Article 5400a, Vernon's Civil Statutes, governs the leasing of county owned land for mineral development and that this article does not authorize the county to enter into pooling agreements. Briefly, Article 5400a provides that such land shall

be leased by the governing body of the county at public auction, after prescribed advertising, to the highest and best bidder.  At least a one-eighth royalty is required to be retained by the lessor.

The ordinance in question controls and regulates only those drilling or operating oil and gas wells.  The county does neither.  Of course, the county is affected by the ordinance in that its lessee cannot obtain production without pooling the land leased from the county with the other land in the drilling block.  It prevents the county's lessee from developing the county's land as a separate tract, and forces him to unitize county and other land in order to obtain production.

We have found no State statute with which the ordinance conflicts.  The ordinance in no way prevents the county from leasing its land in accordance with the provisions of Article 5400a.  It does not prevent the county from leasing its land at public auction or from retaining at least a one-eighth royalty.  As pointed out, it does require the lessee to pool the land with others before drilling.  It is fundamental that all mineral leases are executed subject to the legitimate exercise of police power by governing bodies.  True, we held in Opinion V-582 that the county governing body was not authorized to enter into pooling agreements, but this in no way constituted a holding that leases executed by such body were not subject to a legitimate exercise of police power for the protection of the public health and safety.

It is clear that the purpose of Article 5400a is to insure that governing bodies of political subdivisions shall secure the best possible mineral lease on their lands, not to exempt mineral development of such lands from valid police regulations. It does not entitle a county to have its lands developed in a manner found by the city to injuriously affect lives, property, and the public welfare.  The county's land within the city limits is subject to reasonable police regulations of the city.  City of Llano v. Llano County, 23 S.W. 1008 (Tex.Civ. App. 1893);  City of Victoria v. Victoria County, 94 S.W. 368 (Tex.Civ.App. 1906, reversed on other grounds, 100 Tex. 438, 101 S.W. 190).

In answer to your first question, you are advised that the county's lessee must comply with the city ordinance in drilling a well into the newly discovered sand.  The fact that the lease was executed prior to passage of the ordinance does not exempt the lessee from the provisions thereof, as all parties are considered to contract subject to legitimate exercise of police power by the city.  Adkins v. West Frankfort, 51 F. Supp. 532 (E.D. Ill. 1943); 30 Tex. Jur. 121, Municipal Corporations, Sec. 58; Annotation, 168 A.L.R. 1188.

As to your second question, the ordinance does not prevent the county from leasing its land in accordance with the provisions of Article 5400a, V.C.S.  The fact that this statute does not authorize the governing body of the county to enter into pooling agreements in no way prevents the county's land from being pooled with others for mineral development where required by a valid police regulation.  The lessee of the county must fully comply with the city ordinance in developing land leased from the county, and the county may accept its share of the royalty under units pooled by reason of the city ordinance.

## SUMMARY

The mineral lessee of county owned lands located in a city must comply with a city ordinance regulating mineral development within its limits, even though the lease was executed prior to enactement of the ordinance.

An ordinance of the City of Sinton regulating mineral development within its limits, requiring pooling of county owned lands with others for mineral development, does not prevent the county from complying with the provisions of Article 5400a, V.C.S., in leasing such lands.

Yours very truly,

APPROVED:

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant
CEC:wb

PRICE DANIEL
Attorney General

By _____
Charles E. Crenshaw
Assistant