Gertie M. MILLS et vir, Appellants,

v.

Herman BROWN et al., Appellees.

No. 6733.

Court of Civil Appeals of Texas.
Amarillo.

Jan. 13, 1958.

Rehearing Denied Feb. 10, 1958.

Carlton P. Webb and N. C. Outlaw, Post, for appellants.

Turner, Rodgers, Winn, Scurlock & Terry, Dallas, and Lon Sailers, Dallas, of counsel, for appellees.

CHAPMAN, Justice.

This case originated in the court below by petition of Gertie M. Mills, joined pro forma by her husband, A. R. Mills. The parties cited as defendants were Brown Brothers, a co-partnership composed of Herman Brown and George Brown and Stanolind Oil Purchasing Company, a Delaware corporation. A. M. Cannan, V. A. Brill, Murchison Trust, by its trustee Holman Jenkins and The Howard Corporation, a Texas corporation intervened. A. M. Cannan and V. A. Brill later disclaimed any interest. A. R. Mills, husband of Gertie M. Mills having been made a party only pro forma, the said Gertie Mills will be hereinafter referred to as appellant. The interests of all other parties having been as defendants in the court below and having prevailed in said court will be hereinafter referred to as appellees.

In the trial court appellant sought judgment establishing title to her, as her separate property, in an undivided interest in the oil and gas which had been or would thereinafter be produced from Drilling Block 14 in the City of Post, Texas, less the amount proportionately of the cost and expense of the drilling for and producing of such oil, and for judgment directing immediate payment of all money accrued and

for regular accounting for and payment of all money accruing therefrom in the future. The interest alleged was based on an oil and gas lease on Lot 5 and the South one-half of Lot 4 in Block 69, City of Post, Garza County, Texas, which appellant held from Ralph Cockrell, the fee owner, and which constituted $\frac{9}{16}$ths of the total acreage in Drilling Block 14 in said city.

Ralph Cockrell, the fee owner, was stipulated to be the common source of title. The oil and gas lease was acquired by appellant from Cockrell on October 3, 1949. Ordinance 89 of the City of Post, the ordinance in controversy, was passed February 14, 1950. Prior to said date Ordinance 82 had been in effect in said city prohibiting the drilling for oil and gas within the city limits. Ordinance 89 is a regulatory ordinance passed under the police powers of the City of Post to protect the health and welfare of its citizens, provides for and regulates the drilling for oil and gas and other minerals and limits each drilling block to one well which can be drilled only by one granted a permit and designated by the city as Operator.

Section 6 of Ordinance 89 provides no applicant shall be accepted or acted on except on the verified representation that he holds within the drilling block involved, by lease for oil and gas or other contract authorizing the drilling and operation for oil and gas, more than one-half of the acreage within such drilling block that is then under lease for oil and gas or covered by contract of similar provisions, or owned by applicant in fee.

Section 7 of said ordinance requires the applicant to post a bond and to file a plat or map of the drilling block showing the designation of the lots, blocks or tracts owned or controlled by applicant and the outstanding leasehold interests held by others and of record.

Section 8 of the ordinance provides the applicant must send notice by registered mail at least ten days before the hearing on the application for permit "to each owner

and lessee of record of the lots, blocks and tracts in said drilling block now owned by or under lease to the applicant, addressed to the last known address of such land and lease owners if known to the applicant * * *." Section 5, as material to this hearing, provides:

"In the event an application for a permit for the drilling, completion and operation of a well for oil or gas shall be made by any person not owning or not holding oil and gas leases or drilling contracts from the owners of all lots, blocks or parcels of land included in or embraced within a drilling block as shown upon the map hereto attached, a permit shall be issued to such applicant, his heirs, successors, and assigns only upon the following conditions, in addition to such other conditions as may be provided in other sections of this ordinance, to-wit: The applicant shall be free to enter into such leases, contracts, and agreements with the owners of such other lots, blocks or tracts as he may be able to make. If agreements are not reached with all owners of lots, tracts and blocks within the drilling block, then the owner or owners of any such lot or lots, block or blocks, tract or tracts shall have the right or option, by notice to the permittee given in writing within ten (10) days after the issuance of a permit for a well on the drilling block involved, either (1) to treat his interest as a working interest and contribute his share of all costs and expenses allocated to said well * * * or (2) to treat his interest as a royalty interest. * * * If any owner does not exercise the right and option above provided and give notice to the permittee within the period above provided, the obligation shall then be upon the permittee, his heirs, successors and assigns, to make settlement with such owner on the terms provided in Option 2 above, providing for the pay-ment of a proportionate one-eighth (⅛) royalty."

Section 11 provides:

. "The permittee in any drilling block, or his assigns, shall be known as the Operator thereof for oil and gas, and shall be held primarily accountable under the provisions of this ordinance.

"The interests of persons other than the Operator who hold oil and gas leases or equivalent contracts in any drilling block shall be treated as part of the total working interest of said block, and such other persons holding such interests shall each make the following election with Operator prior to the time a well is commenced on said block. Either (1) to agree in writing with Operator to contribute their share of all costs and expenses * * *; and to execute a bond or deposit securities * * * sufficient reasonably to protect the interests of the Operator under such agreement; * * * or, (2) if such other persons, or anyone of them, fails to elect under (1) above prior to the time Operator commences drilling such well, then he or they shall be deemed to have elected to agree that Operator shall be entitled to reimburse himself currently each month from such other persons proportionate share of the proceeds of sale or production in kind for twice the amount of such other persons' proportionate part of the costs and expenses as set out in Option (1) above. * * *

"Such other persons, as described in this section, shall have at least ten (10) days after receiving written notice of intention of Operator to commence drilling operations, within which to make the elections set out in this section."

This case was tried to the court and specific Findings of Fact and Conclusions of

Law were made. We do not consider it necessary to quote all Findings but believe it will simplify our opinion to quote some of them. The court found that on October 9, 1950, appellees applied for a permit with the Board of Commissioners of the City of Post to become the Operator of Unit No. 14 in the drilling block involved; that at that time one-half of the Unit 14 was under oil and gas lease of record and the applicants owned of record one-half of the existing oil and gas leases of record in the unit; that appellees searched the records of the County Clerk of Garza County and then determined the owners of all interests of record to property in Unit No. 14 and Gertie Mills did not appear as record owner of any interests in the drilling block until April 6, 1951; on October 9, 1950, appellees mailed by registered United States Mail a notice of the hearing on the application for a permit to all the record owners and lessees of all the interests in the minerals in and under the lots comprising Unit No. 14 as shown by the records of the County Clerk of Garza County, and Ralph Cockrell, the record fee title owner received said notice; that said notice of the hearing was also published by appellees in the local weekly newspaper in the City of Post, the Post Dispatch, in accordance with Ordinance No. 89; that on October 23, 1950, in accordance with the provisions of Ordinance 89 a public hearing was had on appellees' application and on said date a valid permit to drill a well on Unit No. 14 was authorized by the Board of Commissioners of the City of Post; that on October 30, 1950, appellees filed a Unit Designation of Unit No. 14 with the County Clerk of said county contributing their leases to such Unit or Pool; that the record owner of the full fee title to Lot 5 and the south half of Lot 4, Block 69 throughout all the period under consideration and until March 31, 1951, was Ralph Cockrell, who did not, within ten days after the permit was issued, elect to participate in the working interest in Unit No. 14; that appellees have claimed ownership of the seven-eighths working interest of Lot 5 and the south half of Lot 4, Block 69 ever since ten days after the permit was issued on October 23, 1950; that on November 8, 1950, appellees completed a well as an oil producer on Unit No. 14, which produced continuously to the date of trial; that Stanolind Oil Purchasing Company purchased all oil produced on Unit 14 to the date of trial and has paid monthly from the date of first runs to the date of trial to Ralph Cockrell one-eighth of the proceeds of all oil produced on Unit No. 14 attributable to his record ownership of the lot and a half in question and has paid appellees during all said time the seven-eighths of the proceeds of the oil produced on said Unit attributable to said lot and a half; that on March 31, 1951, Gertie Mills filed of record with the County Clerk of Garza County, Texas, an oil and gas lease bearing date of October 3, 1949, which was recorded on April 6, 1951; that Gertie Mills did not at the time of this filing, or at any prior time, give actual notice to appellees of the oil she claimed in said unit and appellees did not have actual knowledge, constructive knowledge or any notice, actual or constructive, at any time that Gertie Mills or anyone else claimed to have an oil and gas lease on said lot and a half until actual notice was given to Brown Brothers by letter of December 26, 1951, from Gertie Mills; that appellant lived in the City of Post during the years 1950, 1951, 1952 and 1953 and that she was employed by Carlton Webb, Attorney at Law, in the City of Post as legal secretary during those years; that Gertie Mills paid one dollar annual delay rentals on the lease she claims under for the years 1950 through 1955; that the said Gertie Mills has not contributed the lease she claims to the Unit or Pool; that she never rendered for taxation nor did she pay any taxes to any of the taxing units for any year prior to the date of trial; and that the Operator, Murchison Bros.-Brown Bros., and their successor in title, Murchison Trust and the Howard Corporation and Brown Bros. have rendered the seven-eighths working interest of the lot and half in question for taxation to all taxing units each year from

1950 to date of trial and have paid taxes on said interest to all taxing units each year before delinquency. The record shows the attorney, Carlton Webb, for whom appellant worked as legal secretary during the years named, is one of the attorneys of record for appellant in this case.

The court also made certain conclusions of law. The court concluded that Section 5, Ordinance No. 89, in providing for the owner of unleased lots to have an option or election was referring to *owners of record only,* except when the Operator had actual knowledge. The court also concluded that Section 11, Ordinance No. 89, was not applicable to lots *unleased of record* unless the Operator had actual knowledge of facts contrary to the records, in which it also referred to lots covered by leases of which the Operator had actual knowledge; that Section 11, Ordinance No. 89 in providing for an election for owners of oil and gas leases was referring to *owners of record only,* except when the Operator had actual knowledge at the time of an existing, unrecorded lease, in which event the Operator was required to give notice to such unrecorded lease owner, who would have had an election under the terms of said section. The court concluded that Section 5, Ordinance No. 89 was the controlling and applicable section of that ordinance on lots *unleased of record,* the Operator not having actual knowledge of an existing, unrecorded lease on a particular lot or lots.

The trial court in concluding that said ordinance, in referring to "owners of lots," "leasehold owners," "owners of leases," "the interests of persons other than the Operator who held oil and gas leases," and such other phrases of ownership was referring to "owners of record," unless the Operator had actual knowledge, had the effect of making each section comport with the other and made its conditions possible of performance. Without the construction placed on the ordinance by the trial court the conditions of performance would have been impossible. For example, Section 11 provides such other persons (referring to the interests held by all persons other than the Operator) shall have at least 10 days after receiving written notice of intention of Operator to commence drilling operations, within which to make the elections set out in this section. Unless the construction was placed on this section to mean "owners of leases of record" it is obvious an applicant could not comply because he could not send a written notice to a person who held an interest not of record, or of which he did not know of his own knowledge. Section 6 requires the Operator to own one-half of the oil and gas leases in existence in the unit and to make an affidavit to that effect when applying for a permit. The ordinance would have to mean "leases of record" for the applicant to comply. Additionally, without Section 5 having reference to lots "unleased of record" there would be no limit to the time when rights would become settled and vested.

■ Both our text writers and our courts have held it is proper to look to the entire Ordinance in interpreting and construing it. In 30-A Texas Jurisprudence, Section 298 at page 290 it is said: "An Ordinance should be construed more as to substance than as to form, and should be construed in its entirety giving effect to every part of it."

Hargrave v. Texas & P. R. Co., Tex. Com.App., 12 S.W.2d 1009, 1010, cited under the above statement, though not a case involving an ordinance regulating the drilling of oil and gas is nevertheless some authority for the trial court's action in construing Ordinance 89 in controversy. The court in the Hargrave case, in speaking of an ordinance there under construction said:

"* * * where a statute is fairly susceptible of two constructions, one of which will sustain the act, and the other make it void, the first will be accepted, because necessarily it is presumed the lawmaking body intended its act to have some effect, and not that it should be ineffective for any purpose. * *"

In Marrs v. City of Oxford, D.C., 24 F.2d 541, 552, Id., 8 Cir., 32 F.2d 134, 67 A.L.R. 1336, where an injunction was sought against a city ordinance in the City of Oxford, Kansas, that regulated the drilling for oil and gas, the lessee insisted the court must make a strict construction of the words actually written into the ordinance. The court said:

"This contention is predicated upon the obligation of the permittee, to 'deliver to the credit of each of such owners whose land shall not be under lease' the prescribed royalty. Elemental rules of construction would read into this phrase its obvious meaning, to wit, 'whose land shall not be under lease to the permittee,' * * * ".

In other words, the phrase "to the permittee" was read into said ordinance. For further authority on the question of judicial construction of legislative acts see 37 Am.Jur. 830, Sec. 190 of Municipal Corporations; City of Oak Cliff v. Etheridge, Tex.Civ.App., 76 S.W. 602; Roby v. Hawthorne, Tex.Civ.App., 84 S.W.2d 1108.

In applying the above pronouncements and authorities to the instant case we would have to say the trial court did not commit error in reading into Ordinance 89 the words and expressions above outlined and in holding that the lot and half in question, being unleased *of record* and the Operator being without knowledge or notice, either actual or constructive of appellant's lease within the period provided in the ordinance within which an election must be made, that Section 5 of Ordinance 89 applied. Such construction gives the ordinance meaning and validity. We are further impelled to such conclusion by the fact that any other construction would be wholly unfair and inequitable to the Operator, to others within the drilling unit who leased, contracted in some manner with applicant or exercised their option, and would make for such uncertainty as to be ridiculous. If appellant could recover in this case it would mean that under an ordinance such as the one we have under consideration a person could lease approximately one-half of the entire unit of a city drilling block, keep the instruments off the records and the Operator would be without financial help on the drilling expense of those holding the leases off record. If oil was not discovered the person with the unrecorded leases would have taken no chances. If oil was discovered the Operator might pay the one-eighth royalty, as it did in this case, to the record owners for five, ten, twenty, or even fifty years. Then the person holding the leases off record could come in and demand their seven-eighths interest through all those years. Such a situation would also present an open invitation to backdate leases and would make a fertile field for unscrupulous lease manipulators. We cannot conceive of any legislative body intending to pass ordinances or legislative acts that would lead to such situations as just described and we believe the trial court under the facts of this case had the right to look to the legislative intent of the Board of Commissioners of the City of Post in construing the ordinance.

Though our opinion does not depend upon this fact we would make the observation that the record in this case shows that appellant unquestionably could have participated in Unit 14 within the period provided, just as the others within the unit did, had she desired. The record does not reveal why she kept her lease a secret to the world until thirteen and one-half months after production but it would be unreasonable to assume a legal secretary in a small town such as Post was without knowledge of the fact that an oil well was being drilled on the unit encompassing the property on which she held her unrecorded lease.

Appellant asserts that the effect of the trial court's interpretation of Ordinance 89 was to hold that a lease would be void for failure to record and that a city has no authority to require recordation. We fail to see such limitations in the ordinance as interpreted. She could have protected her

interests through the record owner without recording or could have made her election. Under the trial court's interpretation everyone was protected unless they just sat idly by, either not interested enough in their leases to record them, not interested in their proper share of the oil in the unit or hoping the turn of events would bring them more rewards proportionately than their fellow unit holders.

The record indicates appellant questioned the constitutionality of Ordinance No. 89 in the trial court but she has brought no specific point forward to us on that question. Appellees have brought forward a counter point asserting the ordinance is constitutional and has asked us to so hold. Apparently this question, on an ordinance of this nature, has not reached our Supreme Court for construction but in view of the holdings of other jurisdictions we have no hesitancy in holding the ordinance constitutional. The fundamental question on constitutionality in cases of this nature is whether the owner has been deprived of property by legitimate exercise of police power of the municipal corporation in its effort to promote the general welfare of its citizens.

In Tysco Oil Co. v. Railroad Commission of Texas, 12 F.Supp. 202, the Federal District Court had for construction an ordinance so similiar to ours as to make us believe whoever prepared Ordinance 89 for the City of Post used the City of South Houston ordinance as a guide or pattern. Judge Kennerly, in upholding the constitutionality of the ordinance there under consideration said:

"That plaintiff's title to the oil and gas estate owned by it is held subject to reasonable regulations by the state under the police power is not an open question * * * Nor is the police power confined to the protection of the health and morals of the people, but extends to and includes their safety and general welfare. * * * Nor can it be doubted that the state may delegate such power to a municipal corporation such as is the city of South Houston. * * *"

The Supreme Court of the United States in Gant v. Oklahoma City, 289 U.S. 98, 53 S.Ct. 530, 532, 77 L.Ed. 1058, in an action questioning the authority of the City of Oklahoma to require a $200,000 bond in an ordinance regulating the production of oil and gas, held the ordinance constitutional, saying:

"* * * An otherwise valid statute or ordinance conferring a privilege, is not rendered invalid merely because it chances that particular persons find it hard or even impossible to comply with precedent conditions upon which enjoyment of the privilege is made to depend."

In another case involving drilling within the City of Los Angeles, the court held the ordinance there under consideration constitutional and said:

"The fundamental question then, in each case, is whether or not the owner has been deprived of property by legitimate exercise of the police power of the state in its effort to promote the general welfare of its citizens. * *

"The legislative body entrusted with the police power has a wide discretion which can not be interfered with by the courts. Their laws or ordinances enacted in pursuance of the police power are invested with a strong presumption of validity. If the question as to whether or not the legislation is unreasonable or arbitrary or an unequal exercise of power is fairly debatable, the legislation must be upheld as valid." Marblehead Land Co. v. City of Los Angeles, 9 Cir., 47 F.2d 528, 532.

In Marrs v. City of Oxford, 24 F.2d 541, 548, Id., 32 F.2d 134, 67 A.L.R. 1336, the Federal District Court and the Eighth Circuit Court of Appeals held constitutional a city ordinance regulating the drilling for oil

and gas. The District Court in its opinion said:

"An ordinance which affords some protection to the public generally from the waste of town lot drilling, and gives some assurance to owners of real estate that the oil under their property may be economically recovered, is within the police power. An ordinance that makes it impossible for a diligent or fortunate lot owner to drain the oil from his neighbor's lots, to his own exclusive use; an ordinance which makes it impossible for an owner of property in a block to prevent any recovery of oil on other parts of the block—is valid."

Under the authority of the cases just cited and quoted from we believe, and so hold, that Ordinance 89 of the City of Post, in regulating the operations for and production of oil and gas in the City of Post is constitutional.

The judgment of the court below is in all things affirmed.