**PHILLIPS PETROLEUM COMPANY,**
**Appellant,**

v.

**John W. MECOM, Appellee.**

No. 14659.

Court of Civil Appeals of Texas.

Houston.

Oct. 28, 1965.

Rehearing Denied Nov. 18, 1965.

Wm. J. Zeman, Lloyd G. Minter, Bartlesville, Okl., E. H. Brown, Marion R. Froehlich, Houston, for appellant.

Cecil N. Cook, W. C. Perry, Louis Paine, Jr., Houston, Butler, Binion, Rice, Cook & Knapp, Houston, of counsel, for appellee.

COLEMAN, Justice.

By this action appellant sought a judgment requiring appellee to abandon and plug a producing gas well located on leases owned by appellee within the City of Hitchcock, Texas. Essentially it is appellant's theory that the drilling of a producing gas well by appellant, under a permit issued by the city, on a block created by a comprehensive drilling ordinance enacted by the city, which limited to one the number of wells which could be drilled on each block to each producing sand, gave appellant the vested right to be the sole producer of the gas underlying the lands within this block despite the action of the city in repealing this ordinance, passing a new ordinance, which did not designate blocks, and issuing a permit to appellee authorizing the drilling of a gas well on leases owned by him within this block. On a trial to the court without a jury, the relief sought was denied.

Appellant has concisely stated the chronology of events giving rise to this controversy as follows:

"This controversy arises under the Ordinances of the City of Hitchcock, Galveston County, Texas. The Northeast Hitchcock 9100-foot Frio Field was discovered by the Phillips Petroleum Company-Thompson, Trustee Well in 1957. In that same field Phillips, as operator, drilled and completed the Phillips-Davis D. Well in 1957; the Phillips-Delaney Well in 1958; the Phillips-Louise Well in 1958; the Phillips-Prets Well in 1958; and the Phillips-Huff Well in 1959. At this point in the development of the field, the City of Hitchcock was incorporated at an election held on January 30, 1960. Ordinance No. 4 was passed and became effective April 6, 1960. This ordinance was a comprehensive drilling ordinance, designed to regulate the drilling of all wells for oil and gas within the City of Hitchcock. Attached to and a part of said Ordinance as Exhibit 'B,' was a plat, dividing the City into blocks for the purpose of drilling gas wells. This plat showed the existing gas units, designated by letters, and gas blocks not drilled at the time the ordinance was passed were signated by numbers. After the passage of Ordinance No. 4, Phillips made application for and obtained the permit from the City to drill and operate the Sundstrom Unit, being Block 4 on Ex. 'B' of Ordinance No. 4. There is no controversy herein as to this Block 4 Unit.

"The City of Hitchcock passed Ordinance No. 11 amending Sections 6 and 9 of Ordinance No. 4 effective June 2, 1960.

"On April 5, 1961, the City of Hitchcock issued to Phillips Petroleum Company a permit to drill and operate a well on Block 5. This unit is referred to variously as Block 5, or as the Lasalo Unit, or as the Phillips Petroleum Company-Lasalo Unit. On August 17, 1961, Phillips Petroleum Company as operator completed a gas well in the NE Hitchcock 9100-foot Frio Field on this block 5 Unit.

"On August 27, 1962, the City of Hitchcock passed Ordinance No. 66. This is a comprehensive drilling ordinance to control the drilling of wells for oil and gas within the City of Hitchcock and amends and supersedes Ordinances 4 and 11. In many respects this Ordinance 66 is quite similar to Ordinances Nos. 4 and 11; but Ordinance No. 66 does not have any exhibits 'A' or 'B' to delineate drilling blocks, and nowhere contains any provisions delineating the area of a drilling block. By its terms (Section 31), Ordinance No. 66 purports to repeal all ordinances in conflict therewith.

"After the passage of Ordinance 66 the City of Hitchcock issued to Mecom

the permit dated November 26, 1962, for the Mecom-Kipfer Well to be drilled on a unit of 30.6 acres of land carved out of the Block 5 Unit on which Phillips had previously completed the Lasalo Well. * * * In January, 1963, Mecom commenced operations on the Mecom-Kipfer Well, and said well was completed as a gas well in the Northeast Hitchcock 9100-foot Frio Field."

Ordinance No. 66 provided that the drilling ordinance passed April 6, 1960, "is expressly repealed in its entirety." Among other provisions Ordinance No. 4 provided that it was unlawful to drill a gas well within the City without a city permit; that only one well could be drilled to each sand in each block created by the ordinance; that the "person holding the greater area of ground within the drilling block by ownership in fee or by lease or other contract authorizing the drilling and operation on land for oil or gas" should be granted the permit where more than one application is filed; that the permit should not be construed as a grant to occupy any land except by consent of the owner.

Ordinance No. 11 was enacted for the stated purpose of correcting typographical errors in certain sections of Ordinance No. 4, including Section No. 6. As amended this Section reads:

"Section 6. In the event an application for a permit for the drilling, completion and operation of a well for oil or gas shall be made by any *person not owing or not holding oil and gas leases or drilling contracts from the owners of all lots, blocks or parcels of land* included in or embraced within a drilling block as shown upon the maps attached to said Ordinance No. 4, marked Exhibits 'A' and 'B,' and made a part thereof, a permit shall be issued to such applicant, his heirs, successors and assigns, only upon the following conditions, in addition to such other conditions as may be provided in other sections of this Ordinance, to wit:

"The *applicant* shall be free to enter into such contract and agreements with the *owners of such other lots, blocks or tracts as he may be able to make.* If agreements are not reached with all *owners of lots, tracts and blocks within the drilling block*, then the *owners or owner* of any given *lot or lots, block or blocks, tract or tracts* with whom permittee has failed to reach agreement *shall have the right or option by notice to the permittee* given in writing within thirty (30) days after the issuance of a permit for a well on the drilling block involved, *either* (1) *to treat his interest* as a working interest and contribute toward the actual costs and expense of drilling, completing and operating said well with all necessary appurtenances currently each month in the proportion that the *number of square feet in area owned by him* in the drilling block bears to the number of square feet embraced in said block and thereupon receive the same proportion of the oil or gas produced and saved from such well or its value at the well at the option of the permittee, and a like proportion of natural gas produced, saved and utilized or sold, or the value of the same at the well at the option of the permittee; *or* (2) *to treat his interest as being leased to permittee,* and receive a sum in cash equal, on an acreage basis, to the highest cash bonus per acre paid by the permittee for any lease covering lands within said drilling block; and to receive as a royalty, a share of all oil and gas produced and saved from such well equal to one-sixth (⅙) of the proportion of the whole quantity of oil so produced and saved that the number of square feet in the area owned by him bears to the number of square feet in such drilling block, or at the election of permittee to receive such proportion of the value at the well of the oil

so produced, and to receive a like proportion of the gas and casinghead gas produced, saved and utilized or sold, or at the election of permittee the value at the well of such proportion of gas or casinghead gas produced, saved and utilized or sold. If any *owner* does not exercise the right and option above provided and give notice to the permittee within the period above provided, *the obligation shall then be upon the permittee,* his heirs, successors and assigns, *to make settlement with such owner on the terms provided in option 2 above, providing for the payment of a one-sixth (⅙) royalty. If the owner of a lot or lots, block or blocks, tract or tracts,* shall exercise option 1 above and treat his interest as a working interest, as therein provided, the permittee shall be entitled to a lien on such owner's proportionate part of the oil, gas and casinghead gas or the value thereof to secure payment of such owner's proportionate part of the cost and expense. If option 1 is exercised *by the owner of any lot or lots, block or blocks, tract or tracts,* such owner shall, within the time provided for notice of his election above set forth, file with the City Secretary a bond or other obligation executed by such owner as Principal and by an authorized surety company as Surety, in which such Principal and Surety agree, bind and obligate themselves to pay to the permittee, his heirs, successors and assigns, currently each month that proportion of the actual and necessary costs and expenses involved in the drilling, completion and operation of such well that the number of square feet embraced within the lot or lots, block or blocks, tract or tracts, of such owner shall bear to the total number of square feet in such drilling block, such bond to be approved by the Mayor and held by the City Secretary for the benefit of the beneficiaries therein. *Permits shall be issued in all such cases upon the condition that the permittee, his heirs, suc-*cessors *and assigns, shall make settlement in accordance with the provisions hereof."* (Emphasis added.)

It will be noted that in the first paragraph the ordinance speaks of one not owning or not holding oil and gas leases, etc. In Section 7 the Ordinance provides that where applications for permits to drill in a particular block are filed by more than one applicant "that application shall be granted, if otherwise sufficient, which shall be made by the person *holding* the greater area of ground within the drilling block *by ownership in fee or* by lease or other contract authorizing the drilling and operation on land for oil or gas." (Emphasis added.)

In Section 8, in which the requisites of the application for a permit are prescribed, there is a requirement that the application shall have attached to it "certified or photostatic copies of the deed, oil and gas lease or drilling contract *with the owners of the land* covering the lot, block or tracts, in said drilling block over which applicant has control for oil and gas purposes," so that the application will show the proportion and parts of the drilling block "the applicant owns in fee or *holds under lease* or drilling contract *from the owners."* (Emphasis added.)

Section 8 also provided that two bonds accompany the application, one of which "shall run to the City of Hitchcock, Texas, for so long as said well is producing for the benefit of all persons, * * * *owning lots, blocks or tracts of land* in said drilling block *who have not executed * * * leases,* drilling contracts, waivers or other form of contract under which applicant * * * is * * * authorized to operate the *premises of said owner* for the development and production of oil and gas" conditioned on the payment by applicant for oil and gas as required by the ordinance. (Emphasis added.) It is provided that the principal amount of this bond would be the sum of $50,000.00, but that it would be automatically reduced "by an amount in proportion to the difference between the

total area of the drilling block and the *total area owned by the applicant in fee* or covering which he has leases from or drilling contracts with or waivers *from the owners* authorizing operations for the development and production of oil or gas." (Emphasis added.)

Section 9 of the Ordinance provides that notice of the application for a permit be given by the applicant by registered mail to "each *owner of leases* of lots, blocks and tracts not *owned by or under lease* to the applicant, addressed to the last known address of *such land and lease owners.* * *"

Section 11 provides, in part: "No permit shall be granted or issued for the drilling of a well except upon ground owned by the applicant or held by him under oil and gas lease or drilling contract from the owner giving the owner's permission or authority to drill the well, * * *."

Section 12 provides: "Neither this ordinance or any permit issued hereunder shall be interpreted to grant any right or license to the permittee to enter upon or occupy in any respect in drilling or production operations any land except by the written consent of the owner; nor shall it limit or prevent the free right of any lot owner to contract for the amount of royalty or cash to be paid with respect to his own land or other consideration therefor, or for damages, rights or privileges with respect thereto." The ordinance then provides standards to be observed in drilling and producing oil and gas. These standards are clearly designed to minimize the dangers inherent in such operations in a populated locality. It is not questioned that the City acted well within its authority under its police powers in requiring these safety measures. The ordinance provided penalties for violations and contained a severability clause.

The trial court found Section 6 of Ordinance No. 4, as amended by Ordinance No. 11, "did not apply to oil and gas lease owners within any undrilled block designated therein (such as Mecom) who are not permittees under the Ordinance and did not make any

provisions for such lease owners." It concluded, as a matter of law, that such ordinance and, in particular, Section 6, as amended, is arbitrary, unreasonable and confiscatory, and, therefore, unconstitutional and void in that (1) it deprived Mecom of his property and rights other than by due process and the due course of the law of the land, contrary to the 14th Amendment of the Constitution of the United States of America and Article 1, Section 19, of the Constitution of the State of Texas, Vernon's Ann.St.; (2) it denied him equal protection of the laws and equality of rights, contrary to the 14th Amendment of the Constitution of the United States of America and Article 1, Section 3 of the Constitution of the State of Texas; (3) it authorized Phillips to take Mecom's property without adequate compensation being made and against his consent, contrary to the 14th Amendment to the Constitution of the United States of America and Article 1, Section 17 of the Constitution of the State of Texas.

■ It is apparent that the distinction between owners of lots, blocks and tracts and owners of mineral leases covering lots, blocks or tracts, was in the minds of the City Council when these ordinances were adopted. Under Section 6, as amended, the permittee was required to permit the lot owners to elect to join as a working interest owner in the drilling of a well by the permittee. If he did not so elect, the permittee was required to pay him a royalty. No provision was made for royalties to the owners of leases, nor was there a provision for compensating lease owners for the value of their leases or for the cost of acquiring them. The ordinance does not specifically require the permittee to allow other owners of leases to join as working interest owners. Since Ordinance No. 4, as amended, permitted Phillips to drill and produce gas from the block in question without making provision for the protection of the correlative rights of Mecom, the owner of oil and gas leases in the same block, it was con-

fiscatory and unreasonable, and, therefore, void as to Mecom. Railroad Commission of Texas v. Williams, 163 Tex. 370, 356 S.W. 2d 131; Atlantic Refining Co. v. Railroad Commission of Texas, 162 Tex. 274, 346 S.W.2d 801; Railroad Commission of Texas v. Rowan Oil Co., 152 Tex. 439, 259 S.W. 2d 173; Marrs v. Railroad Commission, 142 Tex. 293, 177 S.W.2d 941; Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 99 A.L.R. 1107, on motion for rehearing 87 S.W.2d 1069, 101 A.L.R. 1393; Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475; Marrs v. City of Oxford, Cir. Ct. of App. 8th Cir., 32 F.2d 134, 67 A.L.R. 1336.

■ In any event, we have concluded that since Ordinance 66 repealed Ordinance 4, the City acted well within its power in granting a drilling permit to Mecom.

■ Ordinance 4, as amended, (a) did not provide for the transfer of title to any interest in land from any person affected by the ordinance into the permittee; (b) did not expressly provide for any pooling of rights or interests in land, minerals or mineral leases. It is clear that Phillips has acquired no title to the oil and gas underlying the land on which Mecom has oil and gas leases. Phillips Petroleum Co. v. Mecom, Tex.Civ.App., 375 S.W.2d 335; Mills v. Brown, 159 Tex. 110, 316 S.W.2d 720. Mecom refused to pool his leases on the terms offered and neither Mecom nor his lessors received any payments provided in the Ordinance. Phillips' right to be the *sole* permittee in the block in question, as provided in Ordinance No. 4, was not a vested right, or a right in the nature of property. Ordinance No. 66 did not deprive Phillips of the right to continue production from its existing well. Nale v. Carroll, 155 Tex. 555, 289 S.W.2d 743; Ryan Consol. Petroleum Corp. v. Pickens, 155 Tex. 221, 285 S.W.2d 201; Dailey v. Railroad Commission, Tex.Civ.App., 133 S. W.2d 219, writ ref.; Texas Trading Co. et al. v. Stanolind Oil & Gas Co., Tex.Civ. App., 161 S.W.2d 1046, writ ref., w. o. m.

■ We are not in agreement with Phillips' argument that Ordinance No. 4 necessarily resulted in forced pooling even if the word "owners" as used in Ordinance No. 11 should be held to include owners of leases. If the Ordinance be valid, lease owners refusing to pool voluntarily might have found themselves unable to produce oil or gas from the leased premises, or might have been forced to forfeit their leases because of their inability or unwillingness under the circumstances to comply with conditions contained in their leases. While under the Ordinance such lessees could not have drilled to a producing formation, for which a permit had already been granted, they might well have desired to drill to a different formation and might have been able to secure a permit under the terms of that Ordinance to do so. Section 4 of the Ordinance authorized the City to issue a permit for one well to each producing sand. The Ordinance does not necessarily effect forced pooling of the various leases in the block.

In the case of Reichert v. City of Hunter's Creek Village, Tex.Civ.App., 345 S.W. 2d 838, error ref., n. r. e., where the City amended its zoning ordinance to place certain property, formerly classified as business property, in a single family residence zone, this Court rejected the argument that before there can be a rezoning there must be a substantial change in conditions. The Court held that the fact situation presented at the time of the passage of the amendatory ordinance will be examined, regardless of what conditions were when the original ordinance was passed, and if the rezoning can be fairly said to bear a reasonable relation to the promotion of the health, morals or general welfare of the community, it will be upheld, otherwise it will not.

In the case of Winslow v. Zoning Board of City of Stamford, 143 Conn. 381, 122 A.2d 789, the Supreme Court of Errors of Connecticut said:

" * * * Furthermore, the legislative body ought to be free to amend its

enactments, when, for example, the purpose is to revoke or modify provisions which time or application has shown to be unwise or subject to desirable change, or when, for added example, the body desires to correct a correctable injustice wrought by the existing ordinance."

■ We think it clear that Ordinance No. 4, as amended, specifically Section 6 thereof, could reasonably be considered unwise, subject to desirable change, and productive of injustice. Ordinance 66 can fairly be said to bear a reasonable relation to the promotion of the general welfare of the community.

The judgment of the trial court is affirmed.

WERLEIN, J., disqualified and not sitting.