## ROYAL BAKING CO. v. OKLAHOMA CITY.

No. 27752. Feb. 1, 1938.

Suits & Lewis, for plaintiff in error.

A. L. Jeffrey, Municipal Counselor, and Leon Shipp, Asst. Municipal Counselor, for defendant in error.

GIBSON, J. At the instance of the city of Oklahoma City the Royal Baking Company was enjoined from using a frame structure on its business premises for a garage or repair shop for its trucks. It was alleged, and the trial court found, that such use violated portions of city ordinance No. 2634, known as the general zoning ordinance.

This ordinance was passed in 1923. For several years prior thereto the baking company had been operating a commercial bakery upon lots 15 and 16, block 20, Maywood addition to Oklahoma City. More than five years before the passage of the ordinance it purchased adjoining lots 13 and 14. At that time a small frame residence was located upon the latter lots. Company officials testified, and the inference is obvious, that these additional lots were bought for the future use of the company, not for residence but for business purposes. Shortly after the purchase of said lots the company enlarged its building by constructing a brick "L" across a portion of lots 13 and 14. The little house on these lots was occupied as a residence until a few years before the filing of the city's suit, when it was converted into a garage and repair shop for the company's cars and trucks. In 1923 the baking company operated with 9 or 10 trucks. At the time of the trial it had grown to the extent it used 25 or more trucks. Its business had not changed in kind, but merely in quantity. Before 1923 some repair work of trucks was done on the premises, but of course not in the small residence, which at that time was occupied by one of the mechanics employed by the bakery.

The testimony was decidedly to the effect (and the court found) that the territory around the bakery had undergone a change, was gradually breaking down for a retail district and that it had become no longer suitable for a residential district. In addition, the city had included this district in its permissive oil and gas drilling ordinances.

From time to time prior to the effective date of the ordinance some repair work or the company's automobiles and trucks had been done on the premises, including all four lots. By the passage of the ordinance the area surrounding these lots was included within what is designated as the U-2 Use Zone, restricted to the building of apartment houses and similar structures.

The general features of the particular ordinance in question here have been before this court in several cases and its general purpose and scope have been upheld as constitutional. In re Dawson, 136 Okla. 113, 277 P. 226; Anderson-Kerr, Inc., v. Van Meter, 162 Okla. 176, 19 P. (2d) 1068. The cases followed Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 71 L. Ed. 303, 47 S. Ct. 114.

In the latter case, however, while upholding the constitutionality of a general zoning law upon "broad" grounds, the court was careful so to limit its holding, declaring:

"It is true that when, if ever, the provisions set forth in the ordinance in tedious and minute detail, come to be concretely applied to particular premises * * * or to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable."

And again:

"While the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise. But although a degree of elasticity is thus imparted, not to the **meaning**, but to the **application** of constitutional principles, statutes and ordinances, which, after giving due weight to the new conditions, are found clearly not to conform to the Constitution, of course, must fall."

In a later case, Nectow v. City of Cambridge, 277 U. S. 183, 72 L. Ed. 842, 48 Sup. Ct. 447, the federal Supreme Court, in considering the question that such an ordinance "as specifically applied" might violate constitutional rights, held that the physical nature of the particular neighborhood involved and the uses to which the adjoining lands could be put should be considered, and said:

"The governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare."

It has been said:

"In some instances municipal ordinances have been held unenforceable, maybe void, upon a showing that changed conditions render them unreasonable or inapplicable under particular circumstances or a given situation. * * *" Nashville, C. & St. L. Ry. v. Baker (Tenn.) 71 S. W. (2d) 678.

That the question of the constitutionality of a city ordinance in its general features may be subordinated to the specific constitutional question involved by its application, and that the landowner has the right to have his case decided upon the question whether the given application of the ordinance against him would be unconstitutional in the circumstances then existing in the neighborhood, are issues determined in the case of Village of Terrace Park v. Errett (C. C. A.) 12 Fed. (2d) 240. In that case the Circuit Court of Appeals for the Sixth Circuit held:

"For the purpose of this case it may be conceded that the village, in the exercise of its police power, either delegated to it by statute or vested in it by the Constitution of Ohio, has authority to pass a zoning ordinance reasonably necessary for the preservation of public health, morals or safety * * * where such necessity appears either from existing conditions or reasonable anticipation of future growth and development. But it does not follow that it can exercise that power in such an arbitrary and unreasonable manner that the ordinance will be unconstitutional in its operation and effect. * * * In such event the owner of property whose constitutional rights are invaded thereby is entitled to the same relief that would be given him if the statute conferring the power were unconstitutional. Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 292, 43 S. Ct. 353, 67 L. Ed. 659."

Although the general validity of such zoning ordinances has been upheld by the Supreme Court of Pennsylvania, that court in the case of In re Gilfillan's Permit, 140 Atl. 136, declared:

"Inasmuch as the natural effect of ordinances of this description is to limit private rights in the interest of public welfare, the exercise of the power must be carefully guarded and permitted only in cases where the conditions and circumstances are such as to show the effect of the ordinance to be a reasonable and proper exercise of police power. * * *

"Petitioner's business had been established at its present location long before the passing of the zoning ordinance and was actively conducted at the time the ordinance went into effect; accordingly, as the property was then used for lawful purposes, the city was without power to compel a change in the nature of the use, or prevent the owner from making such necessary additions to the existing structure as were needed to provide for its natural expansion and the accommodation of increased trade, so long as such additions would not be detrimental to the public welfare, safety and health. The proposed building is not of a character to change the neighborhood. * * *"

In discussing the Village of Euclid and the Cambridge Cases, supra, the Supreme Court of Missouri said: "In other words, each case must be ruled on its particular facts"; and held that, although it had ruled the particular ordinance valid in its general scope, yet as applied to the facts, and the particular property under consideration, the classification "is almost a complete invasion of plaintiff's said property. It is unreasonable, arbitrary, and within the ban of section 30, article 2, of the Constitution of Missouri, and the Fourteenth Amendment to the Constitution of the United States." Glencoe Lime & Cement Co. v. City of St. Louis (Mo.) 108 S. W. (2d) 143.

The foregoing cases, although not dealing with entirely similar facts, are pertinent in view of the baking company's claim that by the application of the ordinance and the enforcement of the letter thereof by the injunctive process an invasion of the property rights of the bakery will be accomplished. It is accordingly not with the constitutionality of the general scope of the ordinance but its application to the particular circumstances that we are here concerned. Certainly the court should hesitate long before issuing an injunction, the effect of which will be either to bring about an unconstitutional application of an otherwise valid law, or come near to such effect.

In view of this probable effect, we look further to see if without doing violence to the general purpose, a reasonable interpretation or application of the law may be had to avoid such probable constitutional question. To do this we consider the ordinance and the facts as they exist, in the light of the principles enumerated above. These pertinent facts appear clearly established. The baking company prior to the ordinance was well established as a going, legitimate concern, and had, with the intention of expanding its business, purchased the lots under consideration with the purpose of using them in the conduct of its business, including such things as might be incidental thereto. It has never done any automobile work for others, and in no sense can it be said to have established a commercial garage, and the transforming of the small house into a

repair shop certainly did not change the nature of the company's business. Nor can it properly be said that as a matter of fact such action changed the nature of the neighborhood. Photographs were introduced in evidence to show that various kinds of businesses were being conducted in the neighborhood, and in some instances show stores and shops in what unquestionably formerly were residences. The trial judge personally inspected the neighborhood and made the finding hereinabove referred to. In reply to a question of counsel the court, after such inspection, said that he would not build either a residence or an apartment on the front part of the property involved. He also was of the opinion that it would be only a short time until the district would be rezoned, and that "as a residential district its day is past, there is no question about it."

The business of the bakery, it is agreed, came under the classification of a nonconforming use at the time of the passage of the ordinance, which provides: "A nonconforming use existing at the time of the passage of this ordinance may be continued."

"Neither the extent, quantity nor quality of the use is mentioned, but only that it must exist. Neither the act, the ordinance, nor the law generally requires the court to speculate as to the number of acts or business transactions necessary to constitute an existing use. * * * Ordinarily an existing use for business combines two factors: (a) Construction or adaptability of a building or room for the purpose, and (b) employment of the building or room or land within the purpose. * * *

"The use for which the property is adapted need not be in actual operation at the time of the adoption of the ordinance, if the attending circumstances connected with the property bear out the conclusion that the owner intended to use the property for that purpose." Appeal of Haller Baking Co. (Pa.) 145 Atl. 77.

In that case the court held that the trial court had erred in finding that there must be a real or substantial use or regularity of use, in order to classify property as an existing use.

In the Massachusetts case of Cochran v. Roemer, 192 N. E. 58, was involved an application of the "nonconforming use" provision of a zoning ordinance. Before and for a time after the passage of the ordinance a retail coal and coke business was carried on by an individual. He sold to a company which made a complete change in the structure on the land. The court held that the business conducted by the company was the same in kind, although greater in extent than that carried on by the individual. The business had grown from a two-or three-truck concern to as much as a 28-truck concern. The court reviewed and reversed a finding that the business was a great drawback to the development of the neighborhood as a residential district, that the heavy traffic incident to the enlarged business was a detriment to the development and comfort of the neighborhood. Noises arising in the conduct of the business had materially increased. The court said:

"All these noises are intimately tied up with the size of the business and are reasonable if business of that size is permissible. * * * The business of the fuel company is not different in kind from that of Berzon simply because it is bigger."

While many cases can be found which uphold the right to restrict nonconforming uses in development, such cases, so far as we have been able to determine, have had under consideration situations where there has not been a breaking down of the district. In this case, as found by the court, the district is on the retrograde, so far as the classification is concerned. Whether rightly or wrongly, business houses have come into existence. The character of the neighborhood evidently has so changed that probably no number of injunctive processes could stop the trend or obtain the high classification anticipated. At all events, we cannot say, in view of the circumstances, that it is necessary for the public welfare, safety, or health of the neighborhood that the strict letter of the law be enforced, when to do so will present a serious constitutional question. Laws should not be given a construction which will imperil their validity when reasonably open to a construction free from such peril. Chippewa Indians v. United States, 301 U. S. 358. The business has not changed in kind. The neighborhood will not be changed or seriously injured by the enlarged incidental use to which the premises are put. By allowing a degree of elasticity in the application of the ordinance so that no arbitrary or unreasonable burden is imposed upon the pursuit of the occupation involved, we can, in view of all the circumstances of this case, avoid the necessity of declaring the ordinance unconstitutional either in its application or its general scope and thus keep within the rule of the cases of In re Dawson, supra, and Julian Oil & Royalties Co. v. Oklahoma City, 167 Okla. 384, 29 P. (2d) 952.

So holding, it follows that the trial court erred in issuing the injunction, and its judg-

ment must be reversed, with directions to dismiss the petition.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH and HURST, JJ., concur.