CITY OF TULSA, Oklahoma, a municipal corporation, Plaintiff in Error,

v.

L. L. SWANSON and Nina Swanson, husband and wife, Defendants in Error.

No. 39296.

Supreme Court of Oklahoma.

Nov. 28, 1961.

Charles E. Norman, Tulsa, for plaintiff in error.

Sanders & McElroy, by David H. Sanders, Tulsa, for defendants in error.

WELCH, Justice.

Following repeated unsuccessful attempts to secure from municipal authorities a reclassification of their land, L. L. Swanson and Nina Swanson, husband and wife, instituted this action to permanently enjoin the City of Tulsa from prohibiting a commercial use of their property which was then zoned in a single family residential district. While the action remained pending, the Tulsa Metropolitan Area Planning Commission proceeded, of its own accord, to "re-study" the surrounding land area, and thereafter, an amendatory ordinance No. 8804 was passed. By the terms of this ordinance the major portion of the property in question was re-zoned to a "use

district classification U3B". This classification permits no commercial structures other than a professional office building which may not occupy more than 20% of the lot area and be more than one-story in height. The sole issue raised by the evidence adduced at the trial was whether zoning ordinance No. 8804, in so far as it specifically applies to the land in question, amounts to an unreasonable, arbitrary, capricious and oppressive limitation upon private rights so as to constitute, in its effect, the taking of plaintiff's property without due process of law. The trial court ruled in favor of the plaintiffs and permanently enjoined the city from imposing any restrictions on said land other than those defined in U3C classification. (The mentioned use, known as a "special service district", permits the erection of a filling station.) From the judgment so entered the City of Tulsa has perfected the present appeal. Our continued reference to the parties will be by their names or designation below.

At issue is the correctness of the trial court's judgment. The proceeding before us is characterized as equitable in nature. Beveridge v. Harper & Turner Oil Trust, 168 Okl. 609, 35 P.2d 435, 440. The findings and conclusions of the trial court as to the unreasonableness of the municipal ordinance are not binding on this tribunal if the record discloses that the matter is "fairly debatable" and that there may be a difference of opinion on the subject. In determining the question so presented we must primarily look to and examine the record in order to ascertain from "the basic physical facts" whether the findings as made are consonant with or against the clear weight of the evidence. Oklahoma City v. Barclay, Okl., 359 P.2d 237; Fletcher v. Board of County Commissioners of Oklahoma County, Okl., 285 P.2d 183; Lockard v. City of Los Angeles, 33 Cal.2d 453, 202 P.2d 38, 43, 7 A.L.R.2d 990, cert. den. 337 U.S. 939, 69 S.Ct. 1516, 93 L.Ed. 1744; Nectow v. City of Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842.

The validity of the municipal ordinance No. 8804 is not challenged in its general scope, but only in so far as it "specifically applied" to the property in question. See Nectow v. City of Cambridge, supra; Royal Baking Co. v. Oklahoma City, 182 Okl. 45, 75 P.2d 1105.

The land involved in this litigation consists of two vacant lots located in Tulsa, Oklahoma, on the east side of South Yale Avenue and on the south side of 33rd Street. These lots, each 75 feet wide on the Yale side and 150 feet deep, cover the southeast corner of the intersection of Yale and 33rd Streets. Yale Avenue, a major artery of travel, is 44 feet wide and consists of 4 lanes which carry heavy vehicle traffic in both northerly and southerly directions. At the intersection of 31st Street and Yale Avenue there is a shopping area, known as the "Highland Shopping Center", which extends south beyond the line of plaintiffs' lots. On the west side of Yale, proceeding southward from the mentioned intersection, there are located the following business establishments: (a) a veterinarian's office and an animal hospital; (b) a green stamp store; (c) an all-night coin-operated laundry; (d) a liquor store; (e) a restaurant; (f) a laboratory; (g) a beer tavern; (h) a super market; (i) three filling stations; the southern most of these stations is situated directly across the street from the property belonging to the plaintiffs. On the east side of Yale, proceeding southward from the intersection of that street with 31st Street, there are found the following commercial establishments: (a) a barbecue stand; (b) a soft drink stand; (c) a dry cleaning establishment; (d) a liquor store; (e) a super market; (f) a private residence; (g) a nursery; (h) a private residence; (i) a florist shop and a greenhouse. The establishment last mentioned which occupies the northeast corner of the intersection of Yale and 33rd Street is located to the north of the land in question. To the east of plaintiffs' property there is a well-developed residential section. The houses immediately to the east of the lots in question face on Allegheny Avenue which is the next street east of Yale. Immediately south of plaintiffs' lots

there are a number of private residences. Six of these property owners had joined with the plaintiffs when the latter applied to the municipal authorities for re-zoning of their premises.

The owner of the florist shop (north of the lots) and the owner of the residential property situated to the south both testified for the plaintiffs. Although the city was invited to present the testimony of any protesting landowner in the neighborhood, none was produced. Plaintiffs' evidence includes a detailed description of the physical facts as outlined and is coupled with the opinion of two experts who were qualified in handling and developing real estate. In their opinion the land in question is worthless and not in demand for uses other than commercial, inasmuch as the entire area has long acquired such character and the neighborhood had not undergone any further changes in this respect when the city undertook its preliminary "re-study" before enacting amendatory ordinance No. 8804, and in their opinion the erection of a filling station upon the vacant lots would not be detrimental to the residential property to the east and would not affect the values thereof to an extent greater than a professional office building.

The evidence of the city consists in its entirety of testimony by a professional urbanist (city planner) in whose opinion the properties on the east side of Yale should be restricted to commercial use of "lesser intensity" in order to furnish a protective "buffer zone" for the residences to the east.

Under the terms of the amendatory ordinance No. 8804, the west side of Yale, south of 31st Street comprises a general commercial district which extends to the midline of the block between 33rd and 34th streets. South of this area there is "a special service district" which covers the three service stations and further south (of the 34th Street) there is a professional office district. The east side of Yale, from 31st Street south to and including plaintiffs' lots, is within the professional office use classification. The next two lots south are zoned for a "multiple dwelling" use and the rest of the property southward is still in the residential district.

The trial court entered comprehensive findings of fact and conclusions of law which show the following: (a) from standpoint of property use there are no distinguishing features between the west and the east side of Yale at the locus in question, so that the center line of this avenue does not provide or form a reasonable boundary between different use classifications; (b) the residence located "behind" or to the east of plaintiffs' land will not be detrimentally affected by the erection of a filling station upon the lots in question, as there is a hedge and a bank, some 6 to 7 feet high, which provide a natural protective barrier upon the boundary line; (c) the highest and best use of plaintiffs' land would be under classification U3C (which permits the erection of a filling station); (d) such use, as aforesaid, would not be injurious to the neighborhood or the public benefit in general; (e) the restriction now imposed upon plaintiffs' property bears no substantial relation to the promotion of public health, safety or general welfare; (f) the property in question constitutes an integral part of the "Highland Shopping Center"; (g) the present zoning of the lots within a professional office district is at variance with the physical facts and the existing conditions in the surrounding area; hence, the imposition of the present restriction upon this specific property is arbitrary, unreasonable and discriminatory.

▪ The recited findings appear to be in consonance with the basic physical facts disclosed by the evidence and there necessarily inheres in the trial court's judgment a determination that the reasonableness of amendatory ordinance No. 8804, as specifically applied to plaintiffs' land, is not a "fairly debatable" question. Our examination of the record impels us to the conclusion that the judgment as rendered is not against the clear weight of the evidence. Oklahoma City v. Barclay, supra.

▪ The proposition advanced by the defendant-city appears in many aspects similar to that presented in Oklahoma City v.

Barclay. By unmistakable tenor of the argument we are urged by the city to, in effect, place its legislative powers beyond the scope of judicial review whenever the matter appears "fairly debatable". But this, as was stated in the Barclay case, must depend upon the physical facts disclosed in each particular case. We must be ever mindful that, inasmuch as the inevitable effect of ordinances, such as the one here involved, is to limit private rights in the interest of public welfare, the exercise of the municipal power must be carefully guarded and be permitted only when the conditions and circumstances as shown disclose a need for the proper exercise of the police power. Oklahoma City v. Barclay, supra. An academic opinion of a professional city planner as to the desirability of a particular restriction to serve as a "buffer of lesser than normal commercial intensity", will not, when contradicted by controlling physical facts, justify this court in holding as a matter of law that the question here presented is "fairly debatable" and precludes judicial interference with the municipal determination of necessity for the particular restriction placed. In Royal Baking Co. v. Oklahoma City, supra, it is stated [182 Okl. 45, 75 P.2d 1107]:

> "In a later case, Nectow v. City of Cambridge, 277 U.S. 183, 48 S.Ct. 447, 448, 72 L.Ed. 842, the federal Supreme Court, in considering the question that such an ordinance "as specifically applied" might violate constitutional rights, held that the physical nature of the particular neighborhood involved and the uses to which the adjoining lands could be put should be considered, and said: 'The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.'
>
> "It has been said: 'In some instances municipal ordinances have been held

unenforceable, maybe void, upon a showing that changed conditions render them unreasonable or inapplicable under particular circumstances or a given situation.' Nashville, C. & St. L. Ry. v. Baker, 167 Tenn. 470, 71 S.W. 2d 678, 680."

The judgment of the trial court is accordingly affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

HALLEY, J., dissents.