TULSA ROCK COMPANY, an Oklahoma Corporation, Appellant,

v.

The BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY, Oklahoma, Appellee,

Bill Kirby et al., Intervenors-Appellees.

No. 46128.

Court of Appeals of Oklahoma, Division No. 1.

July 16, 1974.

Rehearing Denied Aug. 20, 1974.

Certiorari Denied Jan. 28, 1975.

Released by Order of Court of Appeals Jan. 30, 1975.

Boesche, McDermott & Eskridge by T. H. Eskridge, Tulsa, and Carle & Douthitt by John R. Carle, Claremore, for appellant.

Bob J. Vinzant, Dist. Atty., Rogers County, Claremore, for appellee.

Bassmann, Gordon, Mayberry & Scarth by Bill R. Scarth, Claremore, for intervenors-appellees.

ROMANG, Judge:

Tulsa Rock Company, which was the plaintiff in both actions and is the appellant here, will be termed Tulsa Rock.

The Board of County Commissioners of Rogers County, Oklahoma, which was the defendant in both actions and an appellee here, will be termed the defendant or defendant Board.

Bill Kirby and others, who were allowed to intervene in both actions and are appellees here, will be termed the intervenors.

Tulsa Rock Company, which mines or quarries local limestone rock deposits and supplies the crushed limestone to various Tulsa area construction, concrete, and paving companies, asserts that because its present supply was about to become exhausted, it searched out and purchased the tract in question (The SW/4 and the S/2 of SE/4, both of Sec. 34, T. 21 N., R. 14 E., I.M.) in an area of Rogers County then entirely unzoned. Tulsa Rock asserts that the whole of said tract of 240 acres was underlaid by a high quality limestone deposit of from eighty-two to 100 feet in thickness, under a black gumbo overburden not over two feet thick. Having purchased this tract under another corporate name, Tulsa Rock assertedly spent the next eighteen months in testing and preparing the site, then, on March 8, 1971, notified the county commissioner from that district that it was starting mining thereon the next day. Tulsa Rock asserts (in its appeal brief) that the commissioner stated that, although there had been pressure for it, a zoning ordinance for the unzoned area had been prevented by a lack of funds for the necessary land use studies. After Tulsa Rock commenced its quarrying operations, various residents of the area, including some of the intervenors, presented to the defendant their written opposition to the quarry. At the direction of the defendant, the City of Claremore-Rogers County Metropolitan Area Planning Commission (hereinafter Planning Commission) held a hearing in order to make recommendations concerning proposed zoning. Two weeks after a lengthy hearing in a packed courtroom, the Planning Commission made its recommendations for zoning the previously unzoned "Second Planning Area," which area contains all of the Rogers County portion of the township in which Tulsa Rock's parcel lay, plus twelve other specified sections, and specified portions of eight other sections (Tulsa Rock's brief also refers to this area as comprising "some 26 square miles"). This recommendation was that the entire Second Planning Area be zoned AG (Agriculture General), with two exceptions: (1) all land included in previously recorded residential subdivisions, and (2) Tulsa Rock's parcel, for which latter parcel the Planning Commission recommended the zoning classification of M (Mining). The defendant Board adopted the Planning Commission's recommendation that the classification AG (Agriculture General) apply in general, and that land in previously recorded residential subdivision plats be excepted therefrom and classified as RS–10 districts, but it did not accept the recommendation of M (Mining) district for Tulsa Rock's parcel, thus consigning it to the generally applicable AG (Agriculture General) classification.

Thereafter Tulsa Rock brought two actions against the defendant in the District Court of Rogers County, First, (No. C–71–140 in that court) it sought a judgment decreeing that the defendant's zoning resolution was void and enjoining the defendant from enforcing such zoning resolution as against Tulsa Rock's parcel, and also decreeing that said parcel be zoned as an M (Mining) district. Second, (No. C–71–141 in that court) it appealed to said district court from the zoning decision of the defendant, asking for a hearing de novo and a judgment reversing the defendant's action and classifying said parcel as an M (Mining) zone district.

The defendant demurred to the petition in C–71–140 and moved to dismiss it because Tulsa Rock had an adequate remedy at law and had not pursued its legal remedy of applying to the Board of Adjustment of Rogers County (as provided in the zoning regulations of said county). The intervenors filed a similar demurrer and motion.

Defendant also demurred to the petition in No. C–71–141 and moved to dismiss it on the grounds that appeal was not an available means of relief from the exercise by the county commissioners of the legislative function of enacting, changing, or refusing to change zoning regulations, and that Tulsa Rock had not pursued its available remedy of applying to the Board of Adjustment. Intervenors filed a similar demurrer and motion. The defendant also filed a motion to require Tulsa Rock, unless both of the suits were dismissed, to elect between the two actions or, alternatively, consolidate them. The trial court overruled the demurrers and motions to dismiss but granted consolidation of the two actions, allowing exceptions. The defendant answered and cross-petitioned to enjoin Tulsa Rock from conducting mining operations in violation of the AG (Agriculture General) zoning classification of Tulsa Rock's parcel. After a trial, the court denied Tulsa Rock any relief in C–71–140 (which sought injunctive relief) because of "adequate remedies at law, one of which is by way of appeal," and also denied Tulsa Rock any relief in C–71–141 because Tulsa Rock had failed to sustain its allegations and because the zoning resolution complained of was not void or invalid but valid, lawful and enforceable. In addition injunctive relief sought by cross-petition by the defendant and intervenors was granted (but held in abeyance until Tulsa Rock later withdrew its request for supersedeas bond).

■ At the outset we are faced with the question of whether an appeal to the District Court lies from the action of the county commissioners in enacting, chang-ing, or refusing to change a zoning ordinance. In Gregory v. Board of County Commissioners of Rogers County, 514 P.2d 667 (1973) the Supreme Court of Oklahoma, overruling Garrett v. Watson, 342 P.2d 560 (Okl.1959), held that the action of the Board in denying an application for a change in zoning classification, was legislative and not judicial in nature, and therefore an appeal therefrom was not authorized by 19 O.S.1971, § 431. *Gregory* also noted that O'Rourke v. City of Tulsa, 457 P.2d 782 (Okl.1969), had held that the action of City Commissioners in refusing to *re-zone,* being a legislative function, did not permit an appeal under 12 O.S.1961, § 951 (which then, as now, read "A judgment entered, or final order made, by any tribunal, board or officer exercising judicial functions, and inferior to the district court, may be reversed, vacated or modified by the district court except where an appeal to some other court is provided by law."). *Gregory* also quoted approvingly this broader declaration from *O'Rourke*: "The action of a municipality in enactment or amendment of a zoning ordinance, or the refusal to do so, whether it be a master plan or a specific tract, is a legislative function. City of Sand Springs v. Colliver, Okl., 434 P.2d 186, being contra, it is expressly overruled."

Both *Gregory* and *O'Rourke* are consistent with Melton v. City of Durant, 521 P.2d 1372 (Okl.1974), in which the plaintiff, having been denied a permit by the Zoning Administrator to locate two additional mobile home trailers on a vacant lot contiguous with her trailer park, appealed to the Board of Adjustment, which upheld denial of the permit. The plaintiff sought mandamus from the state district court. Its denial of the writ was affirmed on two grounds, the first being that 11 O.S.1971, § 408 providing an appeal to the district court for review of adverse rulings of the Board of Adjustment, rendered applicable 12 O.S.1971, § 1452's provision that mandamus "may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law."

Accordingly, if Tulsa Rock had effectively applied to the Board of Adjustment, it could have appealed to the district court from an unfavorable decision by that Board; but, not having gone to the Board of Adjustment, Tulsa Rock could not directly appeal to the district court. Tulsa Rock's attempted direct appeal to the district court was therefore properly dismissed.

■ This raises the question as to whether failure to exhaust its administrative remedy by applying to the Board of Adjustment was sufficient to warrant the court's refusal to entertain a suit for injunction, even as *Melton* upheld the district court's refusal to issue mandamus. Admittedly, 12 O.S.1971, § 1452 in terms limits the issuance of mandamus, and does not refer to injunctions, but Oklahoma adheres to the historic rule that an injunction will not lie where there is an adequate remedy at law. Home Appliance Store v. Anderson Hotels of Oklahoma, 203 Okl. 592, 224 P.2d 953 (1951) (citing other Oklahoma decisions). Moreover, the applicable statutes (19 O.S.1971, §§ 866.22, 866.23) do not provide for an *appeal* to the County Board of Adjustment from the Board of County Commissioners. We do not comment on the statements in the defendant's brief that Tulsa Rock has never sought a ruling from the Board of Adjustment on a Conditional Use Permit (whereby quarrying of nonmetallic minerals may be followed in an AG district). Tulsa Rock has a pending appeal in the District Court of Rogers County from the decision of the Board of Adjustment denying a nonconforming use classification to Tulsa Rock's parcel. It does, however, appear that the court below should not have dismissed Tulsa Rock's injunction suit on the ground of availability of adequate legal remedy. O'Rourke v. City of Tulsa, 457 P.2d 782, 785–786 (Okl. 1969). This does not necessarily mean that such dismissal was erroneous. Although availability of an adequate legal remedy is a bar to injunctive relief, the absence of such legal remedy does not necessarily require injunctive relief. It is still necessary that the person seeking injunctive relief shall establish his right thereto. Here, Tulsa Rock is not asking for a temporary restraining order or temporary injunction until its case can be heard. Its case has been heard in the trial court and a decision rendered adverse to its contentions. This court therefore turns its attention to the substantive, rather than procedural or remedial issues.

■ Tulsa Rock contends that, although the Supreme Court of Oklahoma has previously considered zoning cases involving the right to drill oil wells, it has never considered the validity of a zoning ordinance which would prevent a fee owner from removing hard minerals owned by him. The importance of this "case of first impression," is urged on two grounds. One, the often mentioned difference as to ownership *in situ,* of oil and gas as distinguished from coal and other solid minerals. The significance of this difference is easily exaggerated. See 1 Kuntz, Law of Oil and Gas § 2.4 (1962): "For purposes of convenience, such theories [as to ownership of oil and gas in place] may also be referred to as the 'ownership' as distinguished from the 'nonownership' theory, although it must not be assumed that 'nonownership' means the absence of property rights." Obviously, an oil and gas interest, whatever the theory as to ownership before reduction to possession, may be far more valuable than the ownership in fee of a vein of some solid mineral. Moreover, a *prohibition against landowner A extracting* from his land the oil and gas in which he has the property rights, may be more drastic than a similar prohibition against his extraction of hard minerals, since there is no perceptible risk of someone else extracting the hard minerals without a physical trespass upon, or under the surface of, A's land. True, some decisions upheld ordinances limiting oil and gas drilling to one well per block (or other unit) and providing for a proportionate sharing of royalties by the owners of the various parcels in that block, e. g. Marrs v. City of Oxford,

32 F.2d 134 (8th Cir. 1929). If that type of ordinance were the only one upheld, the distinction between oil and gas and hard minerals would be relevant here. But other decisions have upheld absolute prohibitions against drilling for oil and gas in certain zones, with no provision having been made for sharing royalties. K. & L. Oil Co. v. Oklahoma City, 14 F.Supp. 492 (W.D.Okl.1936) (upholding refusal of City Council of Oklahoma City to place within a zone in which oil drilling and production was permitted, a forty-acre tract lying within a fine residential section). Although there is a conflict among the decisions, a number of cases have upheld zoning ordinances prohibiting mining and quarrying in certain zones (See Annotation, 10 A.L.R.3d 1226, 1250–1252), prohibiting the removal of sand, rock or gravel from certain areas (*Id.* at 1257), or prohibiting mining within a community (*Id.* at 1287). Thus, Marblehead Land Co. v. City of Los Angeles, 47 F.2d 528 (9th Cir. 1931), cert. den. 284 U.S. 634, 52 S.Ct. 18, 76 L.Ed. 540 affirmed (in a 2-to-1 decision) the refusal of the United States District Court for the Southern District of California to enjoin the enforcement by the City of Los Angeles of its zoning ordinance which prohibited oil well drilling in a zone including the plaintiff landowner's 291-acre tract. This tract was about seven miles from the heart of the City of Los Angeles, and 1,100 feet from the nearest dwelling house. Moreover, following a favorable recommendation by the city planning commission, the city had passed an ordinance excluding the major portion of this land from the residence zone in which it had earlier been placed and, after the owner had leased it for oil and gas, and the lessee had expended $136,000 in preliminary work, had repealed that ordinance and reincorporated the land in the residence zone, largely because of protests from owners of residences in the neighborhood. *Marblehead* goes much farther than the court decision here appealed from.

Tulsa Rock relies on Oklahoma City v. Dolese, 48 F.2d 734 (10th Cir. 1931), which affirmed a federal court decree enjoining the enforcement of an ordinance which specifically declared to be a public nuisance the operation of a sand and gravel storage and sales yard which had been in existence for many years at the same site. Tulsa Rock's reliance on *Dolese* is misplaced for two reasons. One is that Dolese had operated its sand and gravel storage and sales site for thirteen years before Oklahoma City's first zoning ordinance was adopted, and was permitted to continue its business at that site for an additional six years, whereas Tulsa Rock was warned before it began removing the overburden, that there might be objections from other landowners to the establishment of a rock quarry and crushing plant. The other is that in *Dolese* the ordinance declaring the Dolese plant a public nuisance and directing its abatement was unconstitutional and void because it was in the nature of (an injudicious) judicial rather than municipal legislative act. In the present case the ordinance divided the entire planning district into two specific zones. Tulsa Rock argues that the defendant rejected outright the recommendations of the Planning Commission and imposed the defendant's own zoning scheme. A witness testified that at the July 12, 1971 meeting of the defendant board one of its members moved that the Planning Commission recommendations be rejected. This witness could not remember whether the motion was voted upon. Tulsa Rock's brief asserts that the motion was adopted. The resolution adopted by the defendant board on July 12, 1971 recites that the defendant adopts the Planning Commission recommendation that "the zoning regulations presently in effect in the First Planning Area be adopted and enacted in the Second Planning Area", then mentions that objections had been voiced by affected persons as to certain other recommendations of the Planning Commission, and concludes

by placing all of the parcels of the Second Planning District into an AG (Agriculture General) district, except for the previously platted lands, which latter it placed in a specific residential zoning district. In substance, the sole difference between the Planning Commission recommendations and the defendant's resolution was that the former specifically recommended that Tulsa Rock's parcel be classifed as M (Mining), whereas the defendant's resolution made no specific mention of that parcel, hence relegated it to the AG classification.

■ Tulsa Rock alleges that the Board acted without giving advance notice that it would consider the zoning matter, and without holding a hearing thereon. The evidence indicates that at the defendant Board's meeting, Tulsa Rock was present by its Executive Vice-President, by its counsel, and by the President of Tulsa Rock and its parent company, none of whom requested to be heard. The law does not require that the Board duplicate the Planning Commission hearing; it provides for a hearing by the Planning Commission, and such a hearing was in fact held and resulted in recommendations which were sent to the defendant Board and considered by it. This is quite different from Voight v. Saunders, 206 Okl. 318, 243 P.2d 654 (1952) in which the Board of Commissioners of the City of Tulsa had passed three successive zoning ordinances. The court in *Voight* held the second and third ordinances void because they were enacted without any notice of a hearing being given and without any public hearing by the Planning Commission. *Voight* upheld the first ordinance because it was enacted after the Board of Commissioners had first complied with the statutes and city ordinances by giving public notice of a public hearing by the Planning Commission on the matter (which hearing was in fact held). In the present case the hearing by the Planning Commission concededly occurred, and Tulsa Rock's position was presented.

■ Tulsa Rock relies on 19 O.S.1971, §§ 866.2 and 866.10 authorizing the county to adopt a comprehensive plan for the development of the unincorporated areas of the county and providing that the Metropolitan Area Planning Commission shall prepare and adopt a comprehensive plan for the development of such areas. Tulsa Rock concludes that these sections forbid enactment of zoning ordinances prior to the establishment of such a comprehensive plan. In Higginbotham v. City of the Village, 361 P.2d 191 (Okl.1961), a similar argument was made in reliance on a similar statute (11 O.S.1951, § 403), but the court rejected the notion that the latter statute made the adoption of a written comprehensive plan a prerequisite for the validity of a zoning ordinance. Instead, *Higginbotham* approved the language by which a similarly worded statute (N.J.Rev.St., tit. 40:-55, Sec. 30) was construed in Kozesnik v. Montgomery Township, 24 N.J. 154, 131 A.2d 1 (1957): "A 'comprehensive plan' may be validly enacted in an ordinance itself without the comprehensive plan existing in some physical form outside such ordinance." (131 A.2d 1; 2d syllabus).

■ Tulsa Rock also notes that the defendant's resolution of May 24, 1971 had declared the need for "interim zoning" and had directed the Planning Commission to hold a public hearing thereon, but in its July 12, 1971 resolution the defendant adopted zoning resolutions without mentioning the word "interim". Tulsa Rock's Exhibit 11 reprints the July 6, 1971 letter of recommendations from the Planning Commission, which also does not use the qualifier "interim". The foregoing does not invalidate the zoning resolution. Although not described as "interim" it nonetheless remains subject to later amendment or supersession, which would also be true if the May 24, 1971 resolution had declared a need for "permanent zoning". See, generally, 2 Metzenbaum, Law Zoning 1703–1708 (2d Ed.1955 and 1969 Cum.Supp.) and

1 Yokley, Zoning Law and Practice §§ 6–1 to 6–6 (3d Ed.1965 and 1972 Cum.Supp.).

■ Despite its earlier attempt to distinguish between validity of a zoning ordinance preventing extraction of oil and gas and a zoning ordinance preventing extraction of solid minerals, Tulsa Rock quotes 19 O.S.1971, § 866.30 that " . . . The zoning power conferred herein shall not apply . . . to the extraction of oil or natural gas", and urges that this is an invidious discrimination and denies equal protection of the laws to owners of hard-mineral lands. This argument is unpersuasive. As the defendant notes, the exclusion of oil and gas operations may have been prompted by their subjection to extensive Corporation Commission regulation under Titles 17 and 52 of O.S.1971. Section 866.30 also contains other exceptions, probably for similar reasons. This makes it unnecessary to decide whether, if invidious discrimination had existed, it would be better to void the exception as to oil and gas rather than either invalidate the entire section or render it inapplicable to all extractive operations.

■ Nor has Tulsa Rock suffered any great or unpreventable hardship. Of its asserted $300,000 investment in the quarry, it lists $264,000 as the 1969 cost of the land itself. A professional realty appraiser testified that the current market value of that parcel "even if not used for a limestone quarry," was $265,000. In addition, Tulsa Rock asserts that its quarrying operations "had gone on more or less continuously from March 9, 1971 to the date of trial. Limestone rock from the quarry has been produced and sold during that period." As the trial commenced June 5, 1972 (more than a year after quarrying commenced), and the judgment that Tulsa Rock should be enjoined was rendered October 15, 1972, but the restraining order held in abeyance until November 11, 1972, it may well be that the income derived from twenty months' operation of the rock quarry has already exceeded the $36,000 of other expenditures.

■ It is unnecessary to repeat all that earlier Oklahoma cases have held regarding the "fairly debatable" rule. A zoning ordinance being legislative in nature, the district court should uphold it unless it is clearly arbitrary, unreasonable or capricious. Euclid v. Ambler Realty Co., 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L. Ed. 303 (1926), reversing the court below for holding a zoning ordinance invalid, declared "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. Radice v. New York, 264 U.S. 292, 294, 44 S.Ct. 325, 68 L.Ed. 690." It was followed in Zahn v. Board of Public Works, 274 U.S. 325, 328, 47 S.Ct. 594, 71 L.Ed. 1074 (1927) which was in turn quoted and followed in In re Dawson, 136 Okl. 113, 277 P. 226, 229 (1928). Although *Dawson* reached the court because the board of adjustment had upheld the building commissioner's refusal to grant a building permit, the applicant was attacking the *validity* of the zoning ordinance. The district court also denied the permit and was in turn affirmed by the Supreme Court of Oklahoma. Once the district court has rendered its decision upholding (or invalidating) such ordinance the appellate court will look beyond the trial court findings and conclusion as to reasonableness and consider the physical evidence in the record to determine whether indeed it is at least "fairly debatable" that the ordinance was reasonable. Oklahoma City v. Barclay, 359 P.2d 237 (Okl.1961) ; City of Tulsa v. Swanson, 366 P.2d 629 (Okl. 1961). If the appellate court finds that the trial court judgment was not against the clear weight of the evidence, the judgment should be affirmed. In re Dawson, supra; City of Tulsa v. Swanson, supra; City of Tulsa v. Nicholas, 415 P.2d 917 (Okl.1966). Similarly, if the trial court decided that the reasonableness of a denial of rezoning was not "fairly debatable" its decision would be upheld if, having examined the record, the appellate court found it to be "not against the clear weight of the evi-

dence." City of Tulsa v. Mobley, 454 P.2d 901 (Okl.1969). The same test was applied in upholding the district court's denial of a variance which the board of adjustment had granted, Glasgow v. Beaty, 476 P.2d 75 (Okl.1970); also, in affirming the trial court's voiding of a City Council's grant of a requested rezoning. Oklahoma City v. Barclay, supra.

From an examination of the 252 pages of printed briefs and the six-volume transcript of the testimony and exhibits, including two large maps and 51 photographs, we find that the district court's affirmance of the legislative action of the Board of County Commissioners was supported by the evidence and was not against the clear weight thereof.

Affirmed.

BOX, P. J., concurs.