**LAKEWOOD DEVELOPMENT COMPANY,**
a corporation, Appellee,

v.

**The OKLAHOMA CITY, a Municipal Corporation, Appellant.**

No. 47101.

Court of Appeals of Oklahoma,
Division No. 2.

March 25, 1975.

Released for Publication by Order of Court
of Appeals April 17, 1975.

———◆———

McClelland, Collins, Sheehan, Bailey, Bailey & Belt, Oklahoma City, for appellee.

Walter M. Powell, Municipal Counselor, Tom B. McGee, Asst. Municipal Counselor, Oklahoma City, for appellant.

BRIGHTMIRE, Judge.

The City of Oklahoma City appeals from a judgment granting Lakewood Development Company equitable relief based on a finding that the city council's action in refusing to rezone certain property from residential to commercial was "arbitrary and capricious" which in effect unconstitutionally deprived plaintiff of its property without due process of law.

Applicant owned Lakewood Shopping Center located on busy May Avenue in Oklahoma City. After 23 successful years of operation the owner wanted to expand the shopping facility to include eight lots adjoining it across a side street which were acquired through the years—two in 1952, the same year the shopping center was built. Because the lots were zoned for residential use plaintiff had to obtain a special permit from the city in order to use them for supplemental off-street center parking. Nine years later, in 1961, Lakewood Development Company began buying houses behind the parking lot and by 1973, it had purchased six houses and was ready for the expansion.

Accordingly the development company applied to the city for a rezoning classification of the eight lots from "A" Single Family Dwelling District to "E" Local Commercial District. Granting of the application was recommended by the planning commission staff, unanimously approved by the planning commission, but rejected by the city council on a vote of 4 to 3, resulting in this court action.

After hearing evidence, the trial court found and held that the city council's action was "arbitrary and capricious . . . . [in] that [the rezoning] denial had no substantial relation to the public health, safety, morals or general welfare" —a conclusion concerning which there can be no fair debate.

City here seeks to reverse the decree on the basis of two propositions of error: (1) plaintiff failed to prove pertinent ordinances, and (2) the evidence was not sufficient to support a finding that the city's action was arbitrary, capricious, unreasonable or that it was anything other than "fairly debatable."

First in regard to plaintiff's failure to put a copy of the pertinent ordinances in evidence we mention that it is necessary to discuss the proposition only from the standpoint of the "E" local commercial one because the record discloses that the "A" residential ordinance was attached to plaintiff's petition and the city stipulated to its being considered in evidence. Since only the "E" local commercial ordinance is not in evidence, we need only determine if such proof was essential for the relief sought and if not, whether city has shown any prejudice resulting from the omission.

Plaintiff in its petition asked that the property in question be zoned for "E" local commercial use. Both parties used the terms "E Commercial" and "A Residential" in referring to relevant zoning classifications during examination of witnesses and argument to the court as though each understood fully what they were referring to. At the close of plaintiff's evidence city demurred to it for the sole specific "reason that they [sic] have not proven that they cannot put their property to a reasonable use under its existing zoning classification; That the denial by the City Council of the zoning is fairly debatable issue . . . .." If indeed city thought for some reason the text of the ordinance should have been in evidence it declined to articulate it within the hearing of the court. As a matter of fact city seemed fully able to argue its position without either referring to suggesting a need for the absent material.

We of course agree with the city that courts may not take judicial notice of the provisions of municipal ordinances. Drake v. Tims, Okl., 287 P.2d 215 (1955); Barton v. Harmon, Okl., 221 P.2d 656 (1950). But we disagree that under the circumstances of this case it was necessary for the full text of the "E" local commercial ordinance to be before the court in order for it to hold that plaintiff should be allowed to build a commercial building on

the property "in compliance with the 'E' Local Commercial Zoning District under the ordinances of the City of Oklahoma City."

The only reason city gives for saying the absent ordinance was fatal is that the parking space potentially available for plaintiff's proposed building program does not satisfy the requirements set out in the ordinance. Clearly, however, such uneasiness is speculative, premature and irrelevant to the decisive issue below. Whether the proposed construction can ever meet the standards of the fire department, or health department, or whether plaintiff will be able to comply with parking, height, or screening requirements of the ordinance must remain for future determination. At this stage the issue is whether the property lies within what should be an "E" commercial zone—not whether plaintiff has complied or can comply with the requirements of such zoning ordinance. This point, by implication at least, seems to have been recognized by the Oklahoma City planner when he testified that the parking situation would be settled when requests for building permits were acted on—and that if indeed the front two lots are needed for existing shopping center parking, plaintiff will then have to revise its building plans to conform to whatever accommodations the remaining six lots will provide regarding business structures and parking facilities.

City's next contention—that the trial court was wrong in concluding that the city's legislative action was arbitrary, capricious and unreasonable—is premised primarily on a so-called "fairly debatable" rule. This phrase or "rule" has gained considerable popularity with our courts presumably as an aid to the judicial process, but which for want of meaningful definition seems merely to obscure further an already troublesome semantics problem. In trying to use this "rule" as a test for determining the validity of legislative classification,[1] we have tried to find a definition for it and failing have sought to bring forth an understanding of what it means. For this purpose we tried to trace it back to its origin hoping that the context of its usage would shed some helpful light. Our effort led us to Radice v. New York, 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690 (1924). There appellant was convicted of violating a New York statute prohibiting the employment of women in restaurants in first and second class cities between 10 o'clock at night and 6 o'clock in the morning. After saying the legislature had before it "a mass of information" upon which it could conclude that the health of women, being the "more delicate organism," would suffer substantial detriment, the highest court in the land said this: "Where the constitutional validity of a statute depends upon the existence of facts, courts must be cautious about reaching a conclusion respecting them contrary to that reached by the Legislature; and *if the question of what the facts establish be a fairly debatable one,* it is not permissible for the judge to set up his opinion in respect of it against the opinion of the lawmaker." (emphasis ours)

While we hesitate to say what the foregoing italicized language actually means, we can with caution suggest that perhaps one explanation was attempted by the high court of this state in *Barclay* (footnote 1) when it said: "The 'fairly debatable' rule is not a rule applicable to mere words or expressions of opinions, but is applicable to the basic physical facts which would make each zoning ordinance stand or fall on the

---

1. The "test" has been embraced by the high court of this state perhaps because its deceptive catchiness captured the court's imagination. See McNair v. City of Oklahoma City, Okl., 490 P.2d 1364 (1971); Hoffman v. City of Stillwater, Okl., 461 P.2d 944 (1969); Oklahoma City v. Barclay, Okl., 359 P.2d 237 (1961). The latest mention of the "rule" was March 4, 1975, in Clary v. City of Oklahoma City, Okl., 532 P.2d 1383—a zoning case in which the court said the rule meant that the court would "consider the basic physical facts appearing in the record to ascertain whether the reasonableness of the ordinance is 'fairly debatable.'" However, the opinion ends without any further reference to or application of the "rule."

pertinent basic physical facts involved. It then becomes necessary to . . . determine what were the basic physical facts . . . ." After doing so the court concluded that the trial court's voiding of a municipal ordinance was not clearly against the weight of the evidence.

■■ What all this means to us then is that the "fairly debatable" rule is simply another way of saying that legislation must rest upon a reasonable foundation of fact and be related to a lawful objective. Zoning, of course, is a lawful objective so the only other problem for the court is whether a challenged zoning ordinance has a reasonable factual foundation. If it does not then the ordinance is unreasonable and therefore void.

Among the pertinent facts here are these. The eight lots in question comprise some 62,000 square feet, lie along the west side of May Avenue—a main arterial traffic way—and are separated from a large shopping center by only a side street. Property along May Avenue both north and south of these lots is virtually all zoned "E" commercial.

To the south for instance, may be found the shopping center, a prescription shop, two service stations (one abandoned), a music store, two office buildings, a bicycle shop, a laundry, a realty office, another office building, another gas station and a car wash.

Northward along a four-block stretch on the west side of May Avenue are these commercial establishments: a retail jewelry store, two office buildings, a restaurant, a gas station, and a shopping center.[2]

Across the street from subject property is a plant nursery. South of it for six blocks extends another series of businesses: an ice cream shop, a service station, a McDonald's hamburger stand, some vacant property zoned for commercial development, a parking lot, an office building, a

finance and loan company, a beauty shop, and a shopping center.

The only residential dwellings remaining on May Avenue in this sea of commercialism are a few along a three-block span just north of the nursery.

A couple of subject lots are presently being used as a parking lot fronting May Avenue. The other six have boarded-up rental houses on them.

A real estate appraiser, a witness for plaintiff, testified that "because of the surrounding commercial property" the property's highest and best use is for commercial purposes, and residential use is not a reasonable utilization. He appraised the property for commercial purposes at $217,000 as compared to $28,319 for residential—a difference of $188,682.

One city witness, a professional real estate appraiser, agreed that from the standpoint of pure economics, the best use of the property is for commercial purposes. He recognized that the six houses now on the property being boarded up would have to be remodeled before they could be rented. He added that he himself would not build a home facing May Avenue—probably because of the high traffic count (25,000 vehicles daily) and the potential for danger in trying to back out of a residential driveway.

How would the commercial zoning affect the owners of single-family houses behind the proposed · shopping center? The city's appraiser testified that the two houses immediately behind the proposed shopping center expansion would suffer some form of "economic obsolescence" (plaintiff owns one of these homes—the fourth house west on 69th street). Plaintiff's appraiser testified that the effect of commercial zoning would not materially affect nearby homes because of the proposed buffer.

It should be noted here that the trial court ordered plaintiff to erect a six-foot sight-proof fence along the back of the

2. Both the zoning administrator and the city planner for Oklahoma City testified that this mile-long stretch along the west side of May

Avenue is all zoned for commercial use except for plaintiff's lots.

proposed expansion and that plaintiff has signed and filed with Oklahoma City a screening covenant and restriction.

The record reflects that the trial court considered all of these physical facts and made an on-sight inspection. We hold as did the trial court that the city council's action "enforcing the 'A' Single Family Dwelling ordinance was arbitrary and capricious," because the facts support but one non-debatable conclusion—that the refusal to rezone plaintiff's lots to "E" local commercial was unreasonable. Thus the trial court's decree granting plaintiff appropriate relief is not clearly against the weight of the evidence and is affirmed. City of Tulsa v. Swanson, Okl., 366 P.2d 629 (1961).

NEPTUNE, P. J., and BACON, J., concur.